Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIE WEISS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>PERSPECTA INC., JOHN M. CURTIS, SANJU K. BANSAL, SONDRA L. BARBOUR, LISA S. DISBROW, GLENN A. EISENBERG, PAMELA O. KIMMET, RAMZI M. MUSALLAM, PHILIP O. NOLAN, BETTY J. SAPP, and MICHAEL E. VENTLING,<br><br>　　　　Defendants. | Case No. **'21CV0649 WQHLL**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Annie Weiss ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Perspecta Inc. ("Perspecta" or the "Company") and the members of Perspecta's Board of Directors (the "Board" or the "Individual

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Perspecta will be acquired by Peraton Intermediate Holding Corp. ("Peraton"), a portfolio company beneficially owned by affiliates of The Veritas Capital Fund V, L.P. ("Veritas Fund V") and The Veritas Capital Fund VII, L.P. ("Veritas Fund VII" and, together with Veritas Fund V, "Veritas Capital"), through Peraton's subsidiaries Jaguar ParentCo Inc. ("Parent") and Jaguar Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On January 27, 2021, Perspecta issued a press release announcing that it had entered into an Agreement and Plan of Merger dated January 27, 2021 (the "Merger Agreement") to sell Perspecta to Veritas Capital. Under the terms of the Merger Agreement, each holder of Perspecta common stock will receive $29.35 per share in cash for each share of Perspecta common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $7.1 billion.

3. On April 2, 2021, Perspecta filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Perspecta stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the financial analyses supporting the fairness opinions provided by the Board's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Stone Key Partners LLC ("Stone Key"); (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Goldman, Stone Key and Company insiders. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Perspecta's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains offices located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Perspecta.

9.     Defendant Perspecta is a Delaware corporation, with its principal executive offices located at 17988 Edison Avenue, Chesterfield, Missouri 63005 and corporate offices in San Diego, California.  The Company combines innovative technologies with market-leading expertise to

maintain, rehabilitate and strengthen infrastructure around the world. Perspecta's common stock trades on the New York Stock Exchange under the ticker symbol "PRSP."

10. Defendant John M. Curtis ("Curtis") has been President, Chief Executive Officer ("CEO"), and a director of the Company since May 2018, and Chairman of the Board since August 5, 2020. From 2011 through 2013, defendant Curtis was a senior advisor at Veritas Capital.

11. Defendant Sanju K. Bansal ("Bansal") has been a director of the Company since May 2018.

12. Defendant Sondra L. Barbour ("Barbour") has been a director of the Company since May 2018.

13. Defendant Lisa S. Disbrow ("Disbrow") has been a director of the Company since May 2018.

14. Defendant Glenn A. Eisenberg ("Eisenberg") has been a director of the Company since May 2019.

15. Defendant Pamela O. Kimmet ("Kimmet") has been a director of the Company since May 2018.

16. Defendant Ramzi M. Musallam ("Musallam") has been a director of the Company since May 2018.

17. Defendant Philip O. Nolan ("Nolan") has been Lead Independent Director since May 2019 and a director of the Company since May 2018.

18. Defendant Betty J. Sapp ("Sapp") has been a director of the Company since May 2020.

19. Defendant Michael E. Ventling ("Ventling") has been a director of the Company since October 2018.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Veritas Capital is a private equity firm that invests in companies that provide critical products and services, primarily technology and technology-enabled solutions, to government and commercial customers worldwide, including those operating in the healthcare, national security, software, education, aerospace & defense, government services, communications, and energy industries. Veritas Capital seeks to create value by strategically transforming the companies in which it invests through organic and inorganic means.

22. Peraton provides innovative, reliable solutions to the nation's most sensitive and mission-critical programs and systems. As a trusted provider of highly differentiated space, intelligence, cyber, defense, homeland security, and communications capabilities, Peraton is a critical partner to the Intelligence Community, Department of Defense, and select federal agencies and commercial entities. Headquartered in Herndon, Virginia, the company employs 3,500 people across the U.S. and Canada. It is beneficially owned by affiliates of Veritas Capital.

23. Parent is a Delaware corporation and a subsidiary of Peraton.

24. Merger Sub is a Nevada corporation and wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

25. Perspecta is a leading provider of end-to-end enterprise information technology ("IT"), mission, and operations-related services across the U.S. federal government as well as to certain state and local government agencies. Perspecta provides government customers with highly differentiated offerings and capabilities, offering compelling scale, a promising financial profile, an extensive intellectual property portfolio, and unparalleled knowledge in areas that are directly aligned with government priorities.

26. On May 31, 2018, Perspecta Inc. became an independent company through the consummation of the spin-off of the DXC Technology Company's U.S. Public Sector business (the "Spin-Off"), and mergers with Perspecta's legacy companies, Vencore Holding Corp. and KGS Holding Corp. On July 31, 2019, Perspecta acquired all of the equity interests of Knight Point Systems, LLC ("Knight Point"). Knight Point delivers end-to-end managed services and solutions focused on modernizing IT systems, protecting critical networks and driving digital transformation to improve customer transparency and operational efficiency.

27. With offerings in mission services, digital transformation and enterprise operations, Perspecta's team of nearly 14,000 engineers, analysts, investigators and architects create repeatable, differentiated solutions aligned to the Company's customers' goals. The Company's end-to-end portfolio of service offerings and solutions are supported by a strong engine of innovation in Perspecta Labs Inc., and a broad partner network. Perspecta's ten offering families consist of: (i) application services; (ii) analytics and data services; (iii) applied research; (iv) cybersecurity; (v) cloud computing and infrastructure services; (vi) digital strategy and transformation; (vii) digital workplace; (viii) integrated solutions; (ix) investigative services; and (x) systems engineering and integration.

28. On February 3, 2021, the Board declared that Perspecta will pay a cash dividend of $0.07 per share on April 15, 2021 to Perspecta shareholders of record at the close of business on March 3, 2021.

29. On February 5, 2021, Perspecta announced its third quarter of fiscal year 2021 financial results, reporting revenue of $1.134 billion, a 1% increase compared to $1.126 billion in the third quarter of fiscal year 2020. Adjusted diluted earnings per share ("EPS") for the third quarter of fiscal year 2021 was $0.56, a 2% increase compared to adjusted diluted EPS for the third quarter of fiscal year 2020.

**The Proposed Transaction**

30.     On January 27, 2021, Perspecta issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> Chantilly, Va. — January 27, 2021 — Perspecta Inc. (NYSE: PRSP) ("Perspecta" or the "Company"), a leading U.S. government services provider, today announced that it has entered into a definitive agreement under which it will be acquired by Peraton, a portfolio company of leading private investment firm Veritas Capital ("Veritas"), in an all-cash transaction valued at $7.1 billion.
>
> Under the terms of the agreement, Perspecta stockholders will receive $29.35 per share in cash, which represents a premium of 49.7% to the Company's unaffected closing stock price of $19.60 on November 6, 2020, the last trading day prior to media reports being published regarding a potential strategic process for Perspecta, and a premium of 11.8% to the closing stock price of $26.25 on January 26, 2021.
>
> Following the closing of the transaction, Perspecta will be combined with Peraton, a trusted provider of highly differentiated space, intelligence, cyber, defense, homeland security and communications capabilities to select federal agencies and commercial entities. The combination will create a leading government technology provider that delivers end-to-end capabilities in IT and mission support and serves as the strategic partner of choice across a diverse array of U.S. government customers.
>
> Ramzi Musallam, Chief Executive Officer and Managing Partner of Veritas said, "As a long-time investor in Perspecta and its predecessor companies for over a decade, we have always recognized Perspecta for its market differentiation, leading-edge IP, and focused execution in the government technology space. Through the combination with Peraton, we have assembled a strong portfolio of top-tier government technology providers with complementary offerings and are confident that the addition of our resources and industry expertise will enable Perspecta to deliver even greater value to its customers and stakeholders."
>
> Veritas is a significant Perspecta stockholder today, holding approximately 14.5% of Perspecta's shares outstanding. The government technology market has been a key focus area for Veritas since its inception.
>
> "Today marks the beginning of an exciting new chapter for Perspecta. This announcement is the culmination of a comprehensive review process. Having considered all opportunities available, the Perspecta Board of Directors is confident this transaction offers the most compelling value creation for shareholders," said Mac Curtis, Chairman and Chief Executive Officer of Perspecta. "Together with Peraton and with the flexibility Perspecta will have as a private company supported by Veritas, Perspecta will be well positioned to build on our momentum and continue executing on customer commitments as Perspecta delivers cyber, digital-transformation and mission-focused solutions. Looking ahead, Perspecta remains fully committed to serving our customers with dedication, integrity and excellence and ensuring a seamless transition for our employees."

Stu Shea, Chairman, President and Chief Executive Officer of Peraton said, "Perspecta brings highly skilled talent and differentiated technology expertise across a broad range of customers in the government markets which will complement our offerings and enhance our ability to drive innovation. Together, we will create a top-tier, privately-owned government technology business with a focus on missions of consequence. We look forward to welcoming the Perspecta team to Peraton and to building on our growth and success as a proven and trusted partner."

**Approvals and Timing**

The transaction, which has been approved by the Perspecta Board of Directors, is expected to close in the first half of calendar 2021, subject to approval by Perspecta stockholders as well as the receipt of regulatory approvals and other customary closing conditions.

**Insiders' Interests in the Proposed Transaction**

31.   Perspecta insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Perspecta.

32.   Notably, Perspecta insiders stand to reap substantial financial benefits for securing the deal with Veritas Capital. Pursuant to the Merger Agreement, all outstanding Company restricted stock units ("RSUs"), Director RSUs, and performance based restricted stock units ("PSUs") will vest and convert into the right to receive the Merger Consideration. The following table summarizes the number of RSUs, Director RSUs, and PSUs held by Company insiders:

| Name of Section 16(b) Reporting Person | Number of Shares Owned | Number of Company Stock Options Outstanding | Number of Company RSUs Outstanding | Number of Director RSUs Outstanding | Number of Company PSUs Outstanding |
|---|---|---|---|---|---|
| John M. Curtis | 57,066 | — | 181,912 | — | 358,838 |
| John P. Kavanaugh | 65,827 | — | 77,371 | — | 92,824 |
| James L. Gallagher | 8,298 | 12,742 | 32,390 | — | 36,322 |
| Tammy M. Heller | 3,232 | — | 32,704 | — | 35,715 |
| William G. Luebke | 6,785 | — | 27,286 | — | 28,335 |
| Sondra L. Barbour | 13,400 | — | — | 6,800 | — |
| Sanju K. Bansal | 13,400 | — | — | 6,800 | — |
| Lisa S. Disbrow | 13,400 | — | — | 6,800 | — |
| Glenn A. Eisenberg | 7,600 | — | — | 6,800 | — |
| Pamela O. Kimmet | 13,400 | — | — | 6,800 | — |
| Ramzi M. Musallam | — | — | — | — | — |
| Philip O. Nolan | 59,067 | — | — | 6,800 | — |
| Betty J. Sapp | 1,600 | — | — | 6,800 | — |
| Michael E. Ventling | 19,400 | — | — | 6,800 | — |

33. Moreover, defendant Curtis received a passive equity interest in an affiliate fund of Veritas Capital prior to 2014 as part of his compensation for his services to a predecessor of the Company and to Veritas Capital. According to the Proxy Statement, "[d]ue to this interest, defendant Curtis is expected to receive approximately $8 million as a result of the payment of the Merger Consideration for the Shares held by the fund and approximately $0.7 million in related carried interest." Proxy Statement at 51.

34. In addition, if they are terminated in connection with the Proposed Transaction, Perspecta insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Welfare Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| John M. Curtis | 6,937,500 | 15,871,052 | 32,517 | 22,841,069 |
| John P. Kavanaugh | 2,104,725 | 4,995,282 | 32,218 | 7,132,225 |
| James L. Gallagher | 1,202,587 | 2,016,785 | 31,437 | 3,250,809 |
| Tammy M. Heller | 1,138,371 | 2,008,098 | — | 3,146,469 |
| William G. Luebke | 993,840 | 1,632,545 | 31,437 | 2,657,822 |

**The Proxy Statement Contains Material Misstatements or Omissions**

35. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Perspecta's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

36. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the financial analyses supporting the fairness opinions provided by the Board's financial advisors, Goldman and Stone Key; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Goldman, Stone Key and Company insiders.

*Material Omissions Concerning the Company's Financial Projections and Goldman's and Stone Key's Financial Analyses*

37. The Proxy Statement omits material information regarding the Company's financial projections.

38. For example, in performing its *Illustrative Discounted Cash Flow Analysis*, Goldman discounted "the estimates of the unlevered free cash flow to be generated by the Company for the period from January 1, 2021 to March 31, 2026, as reflected in the Forecasts[.]" *Id.* at 33. Similarly, Stone Key performed its discounted cash flow analyses "based on Perspecta's projected unlevered after-tax free cash flows[.]" *Id.* at 39. The Proxy Statement, however, fails to disclose the Company's

unlevered free cash flows utilized by each of Goldman and Stone Key in their financial analyses, as well as the definition of unlevered free cash flows and all underlying line items.

39. The Proxy Statement also fails to disclose the line items underlying adjusted EBITDA over the projection period.

40. The Proxy Statement omits material information regarding Goldman's and Stone Key's financial analyses.

41. The Proxy Statement describes Goldman's and Stone Key's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of Goldman's and Stone Key's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Perspecta's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and Stone Key's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

42. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's unlevered free cash flows used in the analysis; (ii) the terminal values for Perspecta; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.25% to 7.25%; and (iv) the present value of the Company's future tax benefits, as calculated by Goldman using the Tax Attributes, as defined in the Proxy Statement.

43. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the implied enterprise values of the Company as of March 31 for each of the fiscal years 2021 to 2024; (ii) the Company's projected net debt as of March 31, 2021, 2022, 2023, and 2024; and (iii) the aggregate dividends per share of Company common stock estimated to be paid by the Company for the fourth quarter of 2021 and each of the fiscal years 2022 to 2024.

44. With respect to Stone Key's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose the unlevered after-tax free cash flows utilized by Stone Key.

45. With respect to Stone Key's *Precedent Merger and Acquisition Transactions Analysis* and *Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions and companies observed, respectively.

46. With respect to Stone Key's Wall Street analyst price targets analysis, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

47. The Proxy Statement fails to disclose Stone Key's *Tax Asset Valuation Summary*.

48. Without such undisclosed information, Perspecta stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman and Stone Key were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's and Stone Key's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

49. The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinions of Perspecta's Financial Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

50. The Proxy Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

51. The Proxy Statement sets forth that on January 25, 2021:

> [T]he Board held a special meeting, attended by all of the members of the Board other than Mr. Musallam, with members of Perspecta's senior management and

representatives of Goldman Sachs, Stone Key and Paul, Weiss participating, to discuss and consider the revised proposals made by Company A and Veritas Capital. . . . The Board, with the assistance of the advisors, then considered whether it would be beneficial to seek further price improvements from the potential buyers and discussed the potential benefits and risks of doing so, including the risk of losing the current offer from Company A. The Board instructed senior management and the advisors to seek a price increase from Veritas Capital and to continue to negotiate with each of Company A and Veritas Capital regarding certain key terms and to report back to the Board.

On January 26, 2021, representatives of Goldman Sachs and Stone Key communicated with Veritas Capital to indicate that Veritas Capital would need to increase the value of its offer in order to proceed with further discussions regarding an acquisition of Perspecta. Mr. Musallam informed representatives of Goldman Sachs and Stone Key that Veritas Capital was willing to increase its offer price to $29.35 per Share, payable in cash. Mr. Musallam indicated in the course of this conversation that this represented Veritas Capital's best and final offer.

Proxy Statement at 20. Later on January 26, 2021, Perspecta and Veritas Capital executed the Merger Agreement. The Proxy Statement, however, fails to disclose: (i) the Board's basis for not instructing management to also seek a price increase from Company A; and (ii) whether any negotiations took place with Company A following the January 25, 2021 Board meeting and, if so, the details thereof.

52.   The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Goldman's, Stone Key's and Company Insiders' Potential Conflicts of Interest**

53.   The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Goldman and Stone Key.

54.   The Proxy Statement sets forth that "Goldman Sachs may receive an additional fee of up to $2 million at the Company's discretion." *Id.* at 36. Similarly, the Proxy Statement sets forth that, "[i]n the sole discretion of the Chairman and Chief Executive Officer of Perspecta, [Stone Key's] fee may be increased by up to $2 million." *Id.* at 41. The Proxy Statement fails, however, to disclose the parameters Goldman and Stone Key need to satisfy to each receive the additional $2 million fee

and whether Perspecta and the Company's Chairman and CEO anticipate paying Goldman and Stone Key the additional fees.

55. The Proxy Statement further fails to disclose whether Stone Key has performed any services for Veritas Capital or its affiliates in the two years preceding the date of its fairness opinion and, if so, the details thereof and the amount of compensation received in connection with such services.

56. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

57. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

58. The Proxy Statement sets forth:

> As of the date of this Proxy Statement, the Sponsor Entities, Parent and Merger Sub have not entered into any employment agreements with any of the Company's executive officers. Parent or its affiliates may enter into discussions prior to the completion of the Merger with certain executive officers regarding employment with, or the right to purchase or participate in the equity of, Parent or certain of its affiliates, including the surviving corporation, on a going-forward basis following the completion of the Merger, and these discussions may lead to our executive officers entering into agreements, arrangements or understandings with Parent or certain of its affiliates, including the surviving corporation, regarding the same.

*Id.* at 51. Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Veritas Capital and Perspecta executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Veritas Capital's prior proposals or indications of interest mentioned management retention.

59. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This

- 14 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

information is necessary for Perspecta's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

60. The omission of this information renders the statements in the "Opinions of Perspecta's Financial Advisors," "Background of the Merger" and "Interests of Executive Officers and Directors of the Company in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

61. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Perspecta stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

62. Plaintiff repeats all previous allegations as if set forth in full.

63. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

64. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the financial analyses supporting the fairness opinions provided by the Board's financial advisors, Goldman and Stone Key, the background of the Proposed Transaction, and potential conflicts of interest faced by Goldman, Stone Key and Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

66. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

67. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

68. Plaintiff repeats all previous allegations as if set forth in full.

69. The Individual Defendants acted as controlling persons of Perspecta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Perspecta, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

70.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

72.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

73.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Perspecta's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

injunctive relief, in her favor on behalf of Perspecta, and against defendants, as follows:

    A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Perspecta stockholders;

    B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

    D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 14, 2021

WEISSLAW LLP
Joel E. Elkins

By: /s/ Joel E. Elkins

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
        -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS